IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR FLEMING and | § | |
| M&F HOME HEALTH CARE, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-2077-BH |
| | § | |
| MICHAEL O. LEAVITT, SECRETARY OF | § | |
| THE DEPARTMENT OF HEALTH AND | § | |
| HUMANS SERVICES, et al., | § | ECF |
| | § | |
| Defendants. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's Order, filed February 28, 2006, and the consent of the parties, this matter has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c).

Before the Court are the following pleadings:

(1) *Plaintiffs' Original Complaint for Declaratory Relief* ("Compl."), filed October 20, 2005;

(2) *Defendants' Motion to Dismiss and Brief in Support* ("Mot."), filed January 17, 2006;

(3) *Plaintiffs' Response to Defendants' Motion to Dismiss and Brief in Support* ("Resp."), filed May 19, 2006;

(4) *Defendants' Reply in Support of Motion to Dismiss*, filed June 2, 2006; and

(5) *Plaintiffs' Sur-reply*, filed June 28, 2006.[1]

---

[1] Local Rule 7.1 provides for a motion, a response, and a reply. A party may not file supplemental pleadings, briefs, authorities, or evidence without permission of the presiding judge. Since Plaintiff did not seek leave to file a sur-reply, the sur-reply will not be considered.

1

Based on the filings and the applicable law, Defendants' Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

Plaintiff Arthur Fleming is the sole owner of Plaintiff M&F, a Texas corporation that entered into a contract with the Center for Medicare and Medicaid Services ("CMS") in February 1996 to provide home health care services to Medicare patients in the Dallas/Fort Worth area. (Compl. at 5.) Defendant Palmetto Government Benefits Administrators ("Palmetto") served as the fiscal intermediary for this contract.

In March 1998, Palmetto audited M&F's fiscal year end ("FYE") January 31, 1998 cost report. (*Id*. at 5 - 6.) As a result of this audit, Palmetto determined that Medicare had overpaid M&F more than $1.1 million for the period covered. (*Id*. at 6.) M&F disputed Palmetto's findings and alleges that after a partial review by an administrative law judge, the parties settled the proceeding. (*Id*. at 6.) Plaintiffs claim that the settlement agreement was not reduced to writing, and that Palmetto induced Plaintiffs to waive their right to appeal. (*Id*. at 7.) Plaintiffs further allege that since they entered into the settlement, Palmetto has refused to abide by its terms. *Id*.

M&F ceased doing business with Palmetto, Medicare, and CMS on December 31, 1998. (*Id*. at 5.) Plaintiffs' complaint does not state whether they provided the required written notice to CMS. On April 19, 1999, Plaintiffs filed a cost report with Palmetto for the period between February 1, 1998, and December 31, 1998. (*Id*. at 8 - 9.) Plaintiffs assert that the December 31, 1998 cost report served as their cost report for FYE January 31, 1999. *Id.* Plaintiffs acknowledge that they received a Notice of Program Reimbursement ("NPR") for the FYE January 31, 1999 cost report, but do not indicate the date of the NPR. (*Id*. at 12.) Plaintiffs assert that their many requests to reopen the January 31, 1998 and December 31, 1998 cost reports have been denied. (*Id*. at 9 - 10). Plaintiffs

believe that Palmetto's refusal to accept the cost report for FYE January 31, 1999, dated December 31, 1998, is the source of Plaintiffs' inability to make use of the administrative appeals process for the resolution of the accounting dispute at the center of this controversy. (*Id.* at 9).

Plaintiffs took no further action until October 20, 2005, when they filed the complaint before this Court against Defendants. Plaintiffs' complaint alleges that due to Palmetto's refusal to accept the December 31, 1998, cost report for FYE January 31, 1999, Plaintiffs cannot make use of the normal administrative appeal process to contest alleged overpayments to Plaintiffs. (*Id.* at 8 - 10.) Because of the alleged overpayments, Plaintiffs are in collection proceedings for approximately $3,983,000. (*Id.* at 11.) Plaintiffs seek relief from Defendants in the form of (1) writs of mandamus for the acceptance of the December 31, 1998 cost report and to stop collection proceedings; and (2) a declaratory judgment to determine rights under the alleged settlement agreement for FYE January 31, 1998. (*Id.* at 14 - 15.) Plaintiffs assert jurisdiction for the complaint under 42 U.S.C. § 1395 et seq. (Medicare Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act), and 28 U.S.C. § 1361 (writ of mandamus).

On January 17, 2006, Defendants filed a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and FED. R. CIV. P. 12(b)(6) for failure to state a claim.

## II.  THE MEDICARE PROGRAM

The Medicare program, established under Title XVIII of the Social Security Act (commonly known as the Medicare Act, codified at 42 U.S.C. § 1395 et seq.), pays for covered medical care to eligible elderly and disabled persons. Medicare "Part A," the relevant part in the instant case, provides for payment on behalf of eligible beneficiaries for in-patient hospital services and certain

post-hospital services that include home health services furnished by a home health agency. 42 U.S.C. §§ 1395(d) and 1395(b). The Department of Health and Human Services ("DHHS"), through the Secretary, administers the Medicare program and has delegated this function to the Center for Medicare and Medicaid Services. Routine administration of Medicare Part A, such as auditing and reimbursement activities, is handled by Medicare contractors that serve as fiscal intermediaries between CMS and individual providers of services. *Id*. at § 1395(h).

Under Medicare regulations, certain providers, including home health agencies, are required to file a fiscal year end cost report with the fiscal intermediary to determine the true amount due and owing to the provider from Medicare. *Id*. at § 1395(g). Fiscal intermediaries determine whether claims may be reimbursed, determine the amount of reimbursement paid or owed, and assist providers in complying with program rules. *Id*. at § 1395(u). The annual cost report must be filed within five months of the end of a provider's fiscal year. 42 C.F.R. § 413.24(f)(2)(i). Fiscal intermediaries are required to audit the records of providers of services to assure proper payments. *Id*. at § 421.100(c). After the fiscal intermediary has completed its final review of a cost report, it issues a Notice of Program Reimbursement to the provider. *Id*. at § 405.1803(a). The NPR must inform the provider of its right to a hearing within 180 days after the date of the NPR. *Id*. at § 405.1803(b).

If a provider is dissatisfied with a determination in the NPR and the amount in controversy is $10,000 or more, the provider may request a hearing before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo. The request for an appeal must be filed in writing and within 180 days of issuance of the NPR. 42 C.F.R. § 405.1841(a). Within 60 days after the issuance of a PRRB decision, the Secretary of DHHS may reverse, affirm, or modify the PRRB's decision.

42 U.S.C. § 1395oo(f)(1). After 60 days, the PRRB's decision becomes final and is then subject to judicial review in federal district court. *Id.*

Under Medicare regulations, a provider that desires to terminate its participation in the Medicare program must send CMS a written notice of its intent. 42 C.F.R. § 489.52(a)(1). A provider who voluntarily or involuntarily ceases to participate in the Medicare program "must file a cost report for that period under the program beginning with the first day not included in a previous cost reporting period and ending with the effective date of termination." 42 C.F.R. § 413.24(f)(1).

### III. ANALYSIS

#### A. Lack of Subject Matter Jurisdiction

Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(1) and Rule 12(b)(6). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

##### 1. Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Federal Election Comm'n*, 138

5

F.3d 144, 151 (5th Cir. 1998). Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim. *Home Builders Assoc., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *See Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *See id.* (citation omitted). A facial attack usually occurs early in the proceedings and it directs the court's attention only to "the sufficiency of the allegations in the complaint because they are presumed to be true." *Patterson v. Weinberger,* 644 F. 2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction. However, if the defendant supports the motion with evidence, then the attack is factual, and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). In a factual attack, matters outside the pleadings, such as testimony and affidavits, may be considered. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Moreover, a factual attack may occur at any stage of the proceedings. *Id.* Regardless of the nature of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Rodriguez*, 992 F. Supp. at 879.

Defendants do not support their motion with evidence, but rather argue that the law does not confer subject matter jurisdiction over Plaintiff's claims under the Medicare Act. Because this is a facial attack, deciding the issues raised by the parties does not require the Court's resolution of

6

disputed factual matters outside the pleadings. Accordingly, all of Plaintiff's factual allegations will be accepted as true. *See Williamson*, 645 F. 2d at 412.

### 2. Federal Question

Defendants argue that subject matter jurisdiction under 28 U.S.C. § 1331 is precluded by 42 U.S.C. § 405, the Social Security Act.[2] The provisions of § 405 state:

> [n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or government agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this chapter.

42 U.S.C. § 405(h). The term "arising under" is broadly construed to encompass all Medicare claims for relief, regardless of whether the claimant seeks benefits or declaratory or injunctive relief. *Heckler v. Ringer*, 466 U.S. 602, 615 (1984). As a result, the Medicare Act precludes reliance on federal question jurisdiction for the adjudication of Medicare claims. *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 456 (1999); *See Weinberger v. Salfi*, 422 U.S. 749, 761 (1975). Plaintiffs cannot rely upon § 1331 for subject matter jurisdiction of their complaint.

### 3. Declaratory Judgment

Defendants argue that Plaintiffs are not entitled to subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202, the Declaratory Judgment Act. Plaintiffs seek a declaratory judgment to determine their rights under the settlement agreement for the audit of the January 31, 1998 cost report. The Declaratory Judgment Act gives federal courts the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, the Declaratory Judgment Act is not an independent basis for

---

[2] The relevant provisions of 42 U.S.C. § 405, which establishes Social Security review procedures, are made applicable to Medicare disputes by 42 U.S.C. § 1395ii.

7

subject matter jurisdiction and can only provide a remedy where jurisdiction already exists. *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 671-72 (1950); *Okpalobi v. Foster*, 244 F.3d 405, 434 (5th Cir. 2001)(en banc). Plaintiffs cannot rely upon the Declaratory Judgment Act alone for subject matter jurisdiction. Even if Plaintiffs are able to show the existence of an independent basis for subject matter jurisdiction, this Court's discretion to grant declaratory relief is limited by the principle that declaratory relief should not be granted where a special statutory proceeding has been provided. *See Katzenbach v. McClung*, 379 U.S. 294, 296 (1964).

### 4. Medicare Act

Both parties state that Plaintiffs' complaint "arises under" the Medicare Act. Defendants argue that Plaintiffs' complaint not only arises under the Medicare Act, but that the Act is the sole basis for jurisdiction. "A claim arises under the Medicare Act if both the standing and the substantive basis for the presentation of the claim is the Medicare Act, or if the claim is 'inextricably intertwined' with a claim for Medicare benefits." *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 557 (5th Cir. 2004), citing *Heckler v. Ringer*, 466 U.S. 602 (1984). Defendants assert that Plaintiffs' claims meet both of these qualifications, and as a result, the claims must be addressed in accordance with 42 U.S.C. § 405. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 11-12 (2000) (any provider seeking judicial review of any claim for relief must comply with the provisions of § 405(h), which prohibits review except as provided for in § 405).

The Supreme Court has recognized that exhaustion of administrative remedies is a prerequisite to a civil suit regarding a reimbursement claim under the Medicare Act. *See Heckler v. Ringer*, 466 U.S. 602, 617-19 (1984) (dismissing a reimbursement dispute under the Medicare Act for failure to exhaust administrative remedies); *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975) (holding that when

a party is required to exhaust administrative remedies before filing suit, a final administrative decision is a jurisdictional prerequisite to suit). Defendants argue that because Plaintiffs have failed to exhaust administrative remedies as required by 42 U.S.C. § 405(g), Plaintiffs' complaint should be dismissed pursuant to Rule 12(b)(1). Thus, for Plaintiffs to establish that this Court has jurisdiction to hear its claim under the Medicare Act, Plaintiffs must show that they have exhausted the administrative remedies available under the Act.

The Medicare Act establishes a detailed procedure for the resolution of reimbursement disputes. Under § 405,

> a company or individual who is unhappy with a determination made by a Medicare intermediary may request a hearing before the PRRB within 180 days of the issuance of the Notice of Program Reimbursement, provided that the amount in controversy is greater than $10,000. 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1841(a). After conducting a hearing, the PRRB can affirm, reverse, or modify the fiscal intermediary's determination. 42 C.F.R. § 405.1841(b). The Secretary of HHS then has sixty days within which it may affirm, reverse, or modify the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 403.1875. The company or individual that filed the appeal has sixty days from the date of the Secretary's decision to file a civil action. 42 U.S.C. § 1395oo(f).

*Amos v. Palmetto*, 122 Fed. Appx. 105, 110 (5th Cir. 2005). In short, the issuance of the NPR triggers the administrative appeal process that ends with a final decision from the Secretary of DHHS. It is only after a final decision from the Secretary that the provider has exhausted administrative remedies and may file suit in federal court.

Plaintiffs assert that they made repeated requests to Palmetto to reconsider the FYE December 31, 1998 cost report. (Compl. at 9 - 10.) Medicare regulations state that a determination of an intermediary "may be reopened with respect to findings on matters at issue." 42 C.F.R. § 405.1885(a). The language of the regulation indicates that reconsideration of cost reports is at the discretion of the fiscal intermediary. Furthermore, the Supreme Court held that the refusal to reopen a reimbursement

9

determination is not a final agency determination. *Your Home*, 525 U.S. at 453. Plaintiffs were not entitled to have the disputed cost report reopened, nor did Palmetto's refusal to do so constitute a final agency action since providers are entitled to appeal the decisions of fiscal intermediaries to the PRRB. Plaintiffs could have appealed Palmetto's refusal to reopen the December 31, 1998 cost report upon receipt of the January 31, 1999 NPR.

A provider such as M&F is entitled to a hearing before the PRRB if "such provider files a request for a hearing within 180 days *after* notice of the intermediary's final determination." 42 U.S.C. § 1395oo(a)(3) (emphasis added). Thus, the issuance of the NPR is a prerequisite to any appeal. Plaintiffs acknowledge that Palmetto issued an NPR for the FYE January 31, 1999 cost report but do not indicate the date of issuance. (Compl. at 12.) Because Plaintiffs acknowledge receipt of a NPR for the disputed cost report, they had an opportunity to request a hearing before the PRRB after the issuance of the NPR.

While Plaintiffs had the opportunity to appeal, the complaint fails to state whether or not they submitted a proper written appeal as required by 42 U.S.C. § 1395oo(a)(3). Such an appeal could have included the validity of the December 31, 1998 cost report as well as any amount in controversy. If Plaintiffs did not file a proper appeal, then there has been no final agency determination and Plaintiffs have not exhausted administrative remedies. *See Ringer*, 466 U.S. at 619. While Plaintiffs allege that there are no administrative remedies under the Medicare Act to address their concerns (Compl. at 4), this conclusory statement is simply incorrect, and Plaintiffs have failed to allege exhaustion of the administrative remedies detailed in 42 U.S.C. §§ 405 and 1395. Furthermore, Plaintiffs have far exceeded the sixty day statute of limitations period for filing a civil suit. 42 U.S.C. § 1395oo(f); *see Amos* 122 Fed. Appx. at 111. Because the exhaustion of administrative remedies that ends in a final

10

agency determination is a jurisdictional prerequisite to suit, this court lacks subject matter jurisdiction to hear Plaintiffs' claim for declaratory judgment.

**5. Mandamus**

Defendants argue that the common law writ of mandamus, codified in 28 U.S.C. § 1361, is not available as a source of jurisdiction for Medicare disputes. Plaintiffs seek writs of mandamus to compel Defendants to accept the FYE December 31, 1998 cost report for processing and to cease collection proceedings against Mr. Fleming personally.

The federal mandamus statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus will issue only in extraordinary circumstances. *Kerr v. United States Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976). Mandamus jurisdiction may be invoked when: (1) the plaintiff has a clear right to the relief sought; (2) the defendants have a clear nondiscretionary duty to perform; and (3) no other adequate remedy is available. *In re Stone*, 118 F.3d 1032, 1034 (5th Cir. 1997); *See Allied Chemical Corp. v. Daiflon*, 449 U.S. 33, 35 (1980).

The Supreme Court has declined to decide whether mandamus relief is available at all for Medicare claims, or if it is foreclosed under 42 U.S.C. § 405(h). *Ringer*, 466 U.S. at 616. However, the Supreme Court has recognized that mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Ringer*, 466 U.S. at 616. Thus, it appears that the exhaustion of administrative remedies is required before a plaintiff can seek a writ of mandamus. Although the Fifth Circuit has not addressed this issue, a number of circuits have explicitly determined based on *Ringer* that the

exhaustion requirement applies to the plea for relief under the federal mandamus statute. *See Michael Reese Hosp. and Medical Center v. Thompson*, 427 F. 3d 436, 441 (7th Cir. 2005); *BP Care, Inc. v. Thompson*, 398 F. 3d 503, 515 (6th Cir. 2005); *Lifestar Ambulance Service, Inc. v. U.S.*, 365 F. 3d 1293, 1298 (11th Cir. 2004). The Court finds the reasoning in these cases persuasive and likewise holds that the exhaustion requirement applies to Plaintiffs' pleas for mandamus relief.

In the instant case, Plaintiffs failed to appeal the NPR that issued for the January 31, 1999 cost report despite having ample opportunity to do so. Because Plaintiffs have failed to exhaust their administrative remedies under the Medicare Act, the Court finds that it lacks subject matter jurisdiction over the pleas for writs of mandamus.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs' request for a declaratory judgment to determine rights under an alleged settlement agreement is **DISMISSED WITHOUT PREJUDICE** pursuant to FED. R. CIV. P. 12(b)(1). Plaintiffs' request for writs of mandamus for the acceptance of the December 31, 1998 cost report and to stop collection proceedings are **DISMISSED WITHOUT PREJUDICE** pursuant to FED. R. CIV. P. 12(b)(1).

SO ORDERED on this 29th day of September, 2006.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE